DORIS SWOFFORD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Swofford v. Commissioner
Docket No. 5238-73.
United States Tax Court
T.C. Memo 1975-148; 1975 Tax Ct. Memo LEXIS 224; 34 T.C.M. (CCH) 691; T.C.M. (RIA) 750148; May 19, 1975, Filed Michael J. Ebeling, for the petitioner. Charles M. Lock and William J. McNamara, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in the Federal income taxes of Doris Swofford and additions to tax under section 6653(a) [1] for the following calendar years in the following amounts: Addition to Tax Calendar Year
Deficiency
Sec. 6653(a)
1965
$ 3,466.72
$ 173.34
1966
114,313.69
5,715.68
1967
6,998.50
349.93
There being no contest as to the amounts of the deficiencies, we are asked to decide (1) whether *225 petitioner is entitled to relief from tax liability by reason of section 6013(e); and (2) whether the additions to tax under section 6653(a) have been properly determined. FINDINGS OF FACT Certain facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. At all times relevant here, petitioner, Doris Swofford (hereinafter Doris), resided in St. Louis, Missouri, with her husband, Samuel O. Swofford, Jr., (hereinafter Samuel) and four children, Scott, Stacy, Shawn and Shelly. Doris and Samuel filed joint Federal income tax returns for the calendar years 1965, 1966 and 1967 with the district director of internal revenue, St. Louis, Missouri. From 1959 through November, 1967, Doris was employed by Reco Foods, Inc., (Reco) [2] of St. Louis. Reco was engaged in the business of selling foods in wholesale lots to consumers in their homes. Petitioner's position at Reco was that of office and sales manager. Under her direction were four salespeople working "on the street" and four to six others *226 selling food by telephone. Doris was compensated for her services and reported gross wages of $11,575.12, $13,770.66 and $8,879.10, respectively, on the income tax returns filed for 1965, 1966, and 1967. Late in 1965 Doris was provided an automobile [3] by Reco for her exclusive personal and business use. She had control of the automobile until her employment terminated. During part of the calendar year 1965, all of 1966 and through March 2, 1967, Samuel was involved in the operation of a gambling organization or company in the city of St. Louis and in St. Louis County of the type known as "policy". The operations of the policy company are of little relevance to this controversy other than what is commonly referred to as the "cut-loose". This term describes the exchange, between a company man and a so-called "manager" of the drawings or winning numbers for the next lottery for the wagers and list of bets placed on particular numbers. Samuel's activities, conducted at several locations other than his residence, in the operation of the policy company consisted of preparing drawings, checking figures prepared by his employees, and making *227 the "cut-loose" in the County. [4]
On at least two occasions, Doris participated in making the "cut-loose". On both September 17, 1966 and October 15, 1966 she was observed by a special agent of the internal revenue service exchanging packages with individuals who were eventually found to be involved in the policy operations. On March 2, 1967, the gambling operation terminated as a result of raids on the various locations where Samuel conducted the policy company's business. On March 6, 1967, Samuel was arrested for his participation in the operation. Due to the relatively large scale of the policy operation the local newspapers, the St. Louis Post Dispatch and the St. Louis Globe-Democrat, afforded the raids and arrests considerable publicity. [5]
Throughout the years in question Doris was in control of several checking accounts at various banks in the St. Louis area. [6] Deposits to these accounts are known to have been made in the following amounts: *228 Year
Total Known Deposits
1965 [7]
$8,381.05
1966
14,851.03
1967
8,459.96
During 1965, petitioner paid for goods and services by check, as follows: Department Stores
$ 923.89
Medical and Drugs
824.81
Insurance
737.12
Union Electric
309.35
Telephone
151.21
Equality Savings & Loan (Home loan)
1,249.75
Hoefner Bros. Auto Sales (gasoline)
225.97
South Side Bank (Auto loan)
1,480.69
Murphy Finance (Food loan)
440.01
Standard Oil (Heating oil)
181.82
Contributions
30.00
Unidentified Checks
434.12
Miscellaneous:
Edna's Glasses
20.00
Better Homes & Gardens
3.00
City Stickers
23.75
Around the World Program
17.15
Cleaners
46.80
Grandfather
5.00
Gas
40.00
M. Ebeling (Attorney)
20.00
Anne Swofford
5.00
Robert M. Coleman (Attorney)
15.81
John K. Travers
25.36
Mildred Heckwolf
7.50
Joyce Ronson
7.60
Metropolitan Sewer District
21.46
Bender Best
26.85
Pearl Heckwolf
5.00
Bill Schumann - 37 Club
25.00
Steven Swofford
5.00
A. J. Heckwolf
45.61
Sam Swofford, Sr.
5.00
J. La Martina Plumbing Co.
38.00
Frank's Applicance Service
16.40
Cynthia Brady Helleman
13.72
The Floral Shop
24.72
Windson Patrons Ass'n
2.40
M.S. (Safe Deposit Box)
4.00
Robert Korando
80.50
Personal Property Tax
140.65
Tinkemo Guild
5.50
August G. Hertzler
17.78
Jan A. Tupelman
34.03
Chas. Anderson
56.65
A & R Sales
63.81
T. E. Moran
12.00
Nottleman Music Co.
85.00
Robert Beins - Jeweler
31.00
Marks Cleaners
28.95
Cash (2 checks - total)
110.00
Total Checks Written
$8,124.74
*229 During 1966, petitioner paid for goods and services by check, as follows: Department Stores
$1,168.85
Medical and Drugs
323.44
Insurance
1,457.80
Union Electric
315.65
Telephone
125.10
Equality Savings & Loan (Home loan)
1,488.14
South Side Bank (Auto loan)
766.27
Murphy Finance (Food loan)
399.99
Southern Commercial Bank
180.12
Creve Coeur Wholesale Foods
42.27
Dempsey Tegeler (Stock purchase)
1,789.30
Contributions
40.00
Auto Expense
355.84
Unidentified Checks
99.15
Miscellaneous:
Pearl Heckwolf
87.00
Stanley Home Products
2.45
Nettie's Flower Shop
20.60
Swenson Plumbing
75.00
Frank's Appliance Service
7.30
Metro Sewer District
13.98
Von Brocken Office Furniture
117.14
Gravois Bank
45.95
Joe Gerber, Jr.
11.33
Missouri Historical Society
1.00
Art Program
13.75
Around the World Program
11.00
Michael Ebeling
20.00
W. W. Forsman
10.00
Peter G. Gleich - Tuckpointer
32.00
Anna Swofford
10.00
John K. Travers, Collector
13.75
Martin Pest Control
18.00
37 Club (Ken R. Jennewein)
13.50
Highlights for Children
6.95
Int. Consumer Credit Ass'n
5.00
Dept. of Revenue (Motor Vehicle
Regis.)
113.87
Auto Recovery Bureau, Inc.
2,350.00
Carol Sue Kaiser
1.50
Dad's Club
4.00
Bender Best Co.
3,158.00
Cleveland Parents Ass'n
1.00
Service Charge
1.00
Total Checks Written
$14,716.99
*230 During 1967, petitioner paid for goods and services by check, as follows: Department Stores
$ 626.05
Medical and Drugs
859.33
Insurance
1,314.18
Union Electric
397.40
Telephone
131.13
Equality Savings & Loan (Home loan)
1,437.04
South Side Bank (Auto loan)
348.90
Executive Leasing
916.26
LeMay Bank
1,099.53
Reco Foods
46.39
Standard Oil (Heating oil)
75.90
Gravois Bank
606.25
Mobil Oil
78.02
Contributions
10.00
Unidentified Checks
32.69
Miscellaneous:
Collector of Revenue, St. Louis
(Personal Property Tax)
82.84
Nettie's Flower Shop
18.54
Water Division
12.75
Aalco Appliance
16.50
St. Louis Health Division
1.00
American Girl Magazine
3.50
Better Homes & Gardens
3.00
Anna Swofford
25.00
Dept. of Revenue - Motor Vehicle
Regis.
204.64
W. Rudolph
18.75
Chef Boy-Ar-Dee
.60
Newsweek
3.83
YMCA
16.00
Art Program
11.00
M. Ebeling
25.00
Brownie Troop 1783
10.00
Aubuchon Drill Team
10.00
Sonny Randle Football Camp
25.00
Carolyn Sue Kaiser
1.50
Mrs. Frank Mendez
8.00
Norma Menoque
3.00
Stovesand Motor Co.
117.56
Aldens
17.27
John K. Travers - Collector
12.75
Dyna-Hydra Mechanic, Inc.
183.30
Around the World Program
6.60
Post Dispatch
13.05
Barry Mfg. Co.
34.20
Campbell Soups
.50
Martin Pest Control
20.00
Bender Best
13.72
International Consumer Credit
5.00
Acme Rug & Carpet
69.08
General Electric Co.
49.31
Cash (2 Checks - Total)
1,418.36
Total Checks Written
[8] $10,440.22
*231 At various times throughout the period in issue petitioner and Samuel made the following automobile payments to the South Side National Bank for three automobiles they had financed at said bank. Unaccounted For Year
Total Payments Made
By Check
Payments Made
1965
$1,936.28
1,480.69
$455.59
1966
1,326.88
766.27
560.61
1967
2,943.20
[9] 1,448.43
1,494.77
Other cash payments were made by petitioner during 1965, 1966 and 1967 in the form of wages paid to a lady who cleaned her house one day a week. [10] An additional housekeeper, Miss Edna Baer, resided with the family Monday through Friday. In consideration of her assistance she received meals, board and $20 per week in cash. Further, during 1966 and 1967, petitioner expended $73.00 and $72.00, respectively, *232 in cash for parking, bridge tolls, and car washes while conducting her business. After various payroll deductions (including Federal income tax withheld) Doris' net wages for each of the years in question were as follows: [11] Year
Net Wages
1965
$10,408.62
1966
11,853.38
1967
7,103.77
During the years in issue petitioner maintained several savings accounts with her husband. Interest earned on these accounts totalled $48.85 in 1965 and $80.98 in 1966. [12] In addition during 1965, 1966 and 1967 petitioner and Samuel, as trustees for Scott Swofford, maintained a savings account at Gravois Bank. Doris made deposits to said account in the amounts of $250.00 and $50.00 in 1965 and 1966, respectively. Interest totalling $9.55 and $4.67 was earned on this account in 1965 and 1966, respectively. Petitioner also maintained a savings account in 1967 in her own name along with Scott Swofford and Shelly Swofford. In this account Doris deposited $1,781.66 of her earnings in *233 1967. Interest in the amount of $85.56 was earned in that year. Aside from the items of expenditure to which we have already alluded, petitioner made payments for various reasons by direct use of her payroll checks. One dated September 10, 1966, in the amount of $342.43 was endorsed by Doris to Arthur Maier Plumbing Co. Doris also endorsed a payroll check dated November 5, 1966, in the amount of $333.10 to the Berger Furniture Company for the purchase of a bedroom set for petitioner's daughter. [13] In March of 1967, three such checks from Reco dated January 28, 1967, February 18, 1967, and February 25, 1967, in the amounts of $186.98, $535.00, and $202.98, respectively, were endorsed to the order of Richard Hackmeyer, an *234 attorney, who represented Samuel in a criminal case in 1967. Respondent, on May 31, 1973, timely sent a statutory notice of deficiency to petitioner and her husband increasing their gross income and taxable income and consequently their tax due for 1965, 1966 and 1967, based upon Samuel's earnings from the policy company in those years. Doris alone has petitioned the Court with regard to the deficiencies. She does not contest the correctness of the said deficiencies but rather seeks relief from liability for them under section 6013(e). OPINION For Doris to be deemed an "innocent spouse" and relieved from an additional tax liability for 1965, 1966 and 1967 she must prove each element of section 6013(e). [14]; . She has not done so. [15] The record herein indicates that petitioner was aware that items of gross income were not reported in each of the years in question.[16] See section 6013(e)(1)(B). *235 Specifically we note that petitioner deposited and expended more funds than she had available from her savings and earnings. Although the excess of the former over the latter in each of the years in issue is not excessive in amount, the financial data upon which we base the above statement makes no allowance for any funds expended by Samuel in his daily activities nor for any of the daily expenses petitioner would have encountered. [17] Additionally petitioner's actions belie her claim of ignorance. On at least two occasions, namely, September 17, 1966, and October 15, 1966, she was observed exchanging packages with known members of the policy company, making what is commonly referred to as the "cut-loose". Furthermore, even if we were to assume arguendo that prior to March 2, 1967, Doris was unaware of her husband's income producing activities, we think it unlikely that such was the case subsequent to that date when the illegal policy *236 operation conducted by Samuel was terminated as a result of action by authorities. Due to the extent of the gambling activity the raids and subsequent arrests were afforded considerable coverage in the St. Louis newspapers. Not only was Samuel named as a part of the operation, but his picture appeared in the newspaper. Moreover, petitioner thereafter endorsed three of her payroll checks to Samuel's attorney for fees in the criminal matter. In view of the foregoing, we hold petitioner to have had full knowledge of the omissions from gross income on the joint Federal income tax returns filed by her and her husband for 1965, 1966 and 1967. Accordingly, Doris does not qualify as an "innocent spouse" within the purview of section 6013(e). Finally there is in issue the matter of the section 6653(a) additions to tax for negligence. The burden of proving that a penalty under that section has been improperly determined rests with the taxpayer. . In the absence of any credible evidence to support petitioner's position respondent's determination is sustained. Decision will be entered for the respondent.
Footnotes
1. All section references are to the provisions of the Internal Revenue Code of 1954 in effect during the taxable years in issue.↩
2. Reco Foods, Inc. has also been known as R & G Food Club, Inc., and Creve Coeur Wholesale Foods Co.↩
3. The automobile was a 1966 Mercury Comet.↩
4. A different individual made the "cut-loose" in the city of St. Louis.↩
5. Samuel was not only named as a member of the policy operation but his picture appeared in the St. Louis Post-Dispatch in this regard.↩
6. One of these accounts was maintained with Adolph J. Heckwolf, the father of Doris. No funds were deposited to this account by her father. ↩
7. A bank statement for the month of March, 1965, was not available.↩
8. The checks for goods and services written on petitioner's checking accounts for 1965, 1966 and 1967 listed above represent all checks written on those accounts in those years.↩
9. Although the check record reveals payment of only $348.90 by check the remaining balance of $1,099.53 has been adequately accounted for and accordingly has been included as a payment by check.↩
10. The lady was paid either $8.00 or $9.00 a day.↩
11. Petitioner also received approximately $5.00 per week in cash from her supervisor at Reco which was not reported on her tax return.↩
12. In one such account petitioner deposited $1,111.27 in 1965 and withdrew $324.00 in the same year. All funds in said account were withdrawn on March 24, 1967 in the amount of $1,822.68. These funds were used to purchase a certificate of deposit in the amount of $1,800.00 on April 24, 1967, in the names of Doris, Scott Swofford and Shelly Swofford. In another account maintained with Samuel all funds were withdrawn on Nov. 25, 1966 in the amount of $624.29.↩
13. To complete this purchase cash was added and paid to the Berger Furniture Company.↩
14. Section 6013(e) provides in part: (e) Spouse Relieved of Liability in Certain Cases.-- (1) In General. Under regulations prescribed by the Secretary or his delegate, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income. ↩
15. There is no question that petitioner meets part of the first requirement in that there was omitted from gross income on each return an amount properly includable therein which was in excess of 25% of the amount of gross income stated in the return. ↩
16. This finding alone is sufficient to prevent Doris' being entitled to the relief provided in said statute. Accordingly there is no reason to discuss each condition set forth in sec. 6013(e) separately.↩
17. As petitioner was living with Samuel and aware of his lack of legitimate employment, we do not believe that inquiry was not made into how he managed to eat and drink outside the home on a regular basis as well as operate an automobile daily.↩